UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITALY SASIN<br><br>        Plaintiff,<br>vs.<br><br>ENTERPRISE FINANCIAL GROUP, INC.<br><br>        Defendants. | Case No.:  CV 17-4022-CBM-RAO<br><br>**ORDER RE: DEFENDANT ENTERPRISE FINANCIAL GROUP'S MOTION TO DISMISS AND DEFENDANT UNITED SERVICE PROTECTION CORPORATION'S MOTION TO STAY** |

The matters before the Court are Defendant Enterprise Financial Group's ("Enterprise") Motion To Dismiss (the "Motion") and Defendant United Service Protection Corporation's ("USPC's") Motion To Stay. (Dkt. Nos. 52, 63.)

**I.   BACKGROUND**

This is a putative class action for alleged violations of the Telephone Consumer Protection Act ("TCPA"). The operative complaint asserts four causes of action against Defendants Enterprise, Royal Administration Services, Inc. ("Royal"), and USPC: (1) negligent violations of the TCPA by using an automatic telephone dialing system ("ATDS"); (2) knowing or willful violations of the TCPA by using an ATDS; (3) negligent violations of the TCPA by calling numbers on the Do-Not-Call-Registry ("DNC Registry"); and (4) knowing or

1

willful violations of the TCPA by calling numbers on the DNC Registry. (Dkt. No. 40, Second Amended Complaint ("SAC") ¶¶ 70, 74, 78, 82.) Plaintiff's claims arise from alleged phone calls made to Plaintiff's mobile telephone numbers without Plaintiff's prior consent.

## II. STATEMENT OF LAW

### A. Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a court to dismiss a Complaint for lack of personal jurisdiction. "The Due Process Clause [of the Fourteenth Amendment] protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he or she has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72 (1985). California's long-arm jurisdictional statute permits the exercise of personal jurisdiction so long as it comports with federal due process. *See* Cal. Civ. Proc. Code § 410.10; *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800-01 (9th Cir. 2004). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger,* 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted)); *see also Walden v. Fiore,* 134 S.Ct. 1115, 1121 (2014) ("For a state to exercise jurisdiction consistent with due process, the defendant's conduct must create a substantial connection with the forum State."). Under the minimum contacts test, jurisdiction can be either general or specific. *Schwarzenegger,* 374 F.3d at 801-02.

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Id.* at 800. To show personal jurisdiction, "[t]he plaintiff need only

make a prima facie showing of jurisdictional facts." *Id.* The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint will be taken as true. *Id.* A court, however, "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992).

**B.     Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Dismissal of a complaint can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). On a motion to dismiss for failure to state a claim, courts accept as true all well-pleaded allegations of material fact and construes them in a light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031–32 (9th Cir. 2008). The Court may also assume as true the contents of a document incorporated by reference for purposes of ruling on a motion to dismiss under Rule 12(b)(6). *United States v. Ritchie*, 342 F. 3d 903, 908 (9th Cir. 2003).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555. Labels and conclusions are insufficient to meet the Plaintiff's obligation to provide the grounds of his or her entitlement to relief. *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* If a complaint cannot be cured by additional factual allegations, dismissal without leave to amend is proper. *Id.*

C. **Stay of Proceedings**

A district court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). Whether to grant a stay pending the outcome of other proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). When considering whether to stay proceedings, courts must consider: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.3d 265 (9th Cir. 1962)).

### III. DISCUSSION

A. **Requests for Judicial Notice**

The Court rules on the parties' requests for judicial notice (Dkt. Nos. 53, 68, 77) as follows:

| ENTERPRISE'S REQUESTS FOR JUDICIAL NOTICE | | RULING |
|---|---|---|
| 1. | **Exhibit A**: December 27, 2013 "Statement of Information" filed with the California Secretary of State, which lists Plaintiff as a director of Got Warranty, Inc., and lists "Extended Auto Warranty Sales" as the type of business of the corporation | Denied as irrelevant. |
| 2. | **Exhibit B**: December 27, 2013 "Statement of Information" filed with the California Secretary of State, which lists Plaintiff Sasin as the a director of NCWC Dealer Services, Inc., and lists "Extended Auto Warranty Sales" as the | Denied as irrelevant. |

| | | | |
|---|---|---|---|
| | | type of business of the corporation | |
| | 3. | **Exhibit C**: "Certificate of Amendment of Article of Incorporation" filed with the California Secretary of State on November 2, 2015, wherein Plaintiff certifies he is treasurer of NCWC Dealer Services, Inc. and Plaintiff and the company's president declare the Articles of Incorporation of NCWC Dealer Services, Inc. has been amended changing the name of the corporation to "US Dealer Services Inc" | Denied as irrelevant. |
| | 4. | **Exhibit D**: "Certificate of Fact" from the Office of the Texas Secretary of State, certifying "Legacy Filing for ENTERPRISE FINANCIAL GROUP, INC. . . . , a Domestic For-Profit Corporation, was filed in this office on June 22, 1977," and the "entity status in Texas is in existence." | Denied as moot.[1] |
| | 5. | **Exhibit E**: April 28, 2000 "Articles of Incorporation of Royal Administration Services, Inc.," stating Royal Administration Services, Inc. is a corporation under the laws of the state of Florida | Denied. The SAC alleges Royal is a Florida corporation and the Court takes allegations in the SAC as true for purposes of the Motion. Therefore, the Court need not take judicial notice of Exhibit E. |
| | 6. | **Exhibit F**: "2017 Florida Profit Corporation Annual Report" listing principal place of business of Royal Administration Services, Inc. as 51 Mill Street, Building F, Hanover, MA 02339. | Denied. The SAC alleges Royal has its principal place of business in Massachusetts, and the Court takes allegations in the SAC as true for purposes of the Motion. Therefore, the |

---

[1] At the hearing, Enterprise's counsel withdrew Enterprise's request for judicial notice as to Exhibit D.

| | | Court need not take judicial notice of Exhibit F. |
|---|---|---|
| **PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE** | | **RULING** |
| 7. | **Exhibit 1:** September 12, 2016 "Statement of Information" filed with the California Secretary of State showing Enterprise is registered in California and employs National Registered Agents, Inc. as its agents | Granted as to the existence of the document, but not for the truth of its contents. |

### B. Personal Jurisdiction

Enterprise seeks to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(2) on the ground the Court lacks personal jurisdiction over it.

#### 1. General Jurisdiction

"General jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state are so constant and pervasive as to render it essentially at home in the state." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (internal quotation marks and citations omitted).

Here, Plaintiff fails to show Enterprise's contacts are "so constant and pervasive as to render it essentially home" in California. *Martinez*, 764 F.3d at 1066. Even assuming as true Enterprise attempted to sell Vehicle Service Contracts ("VSCs") to Plaintiff (a California resident), and assuming Enterprise has sold VSCs to other California residents (SAC ¶¶ 4, 13), those sales are an insufficient basis for the Court to exercise general jurisdiction over Enterprise. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) ("Plaintiff would have us . . . approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business. That formulation, we hold, is unacceptably grasping.") (internal citations omitted); *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) ("[D]efendant's occasional, unsolicited sales of tournament

tickets and merchandise to California residents are insufficient to create general jurisdiction.").

Accordingly, this Court **DECLINES** to exercise general jurisdiction over Enterprise.

### 2. Specific Jurisdiction

Having found the Court cannot exercise general jurisdiction over Enterprise, the Court must determine whether it may exercise specific jurisdiction over Enterprise. Courts apply a three-part test to determine whether a defendant has sufficient contacts to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136 (9th Cir. 2017). Plaintiff "bears the burden of satisfying the first two prongs" of the specific jurisdiction test. *Id.* at 1142 (citation omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citation omitted). "[W]here an out-of-state defendant contacts a plaintiff who resides in California in violation of the TCPA, those contacts may be sufficient to establish the existence of specific jurisdiction. . . . [U]nder such circumstances, the defendant has directed its activities at the forum state by calling the plaintiff without the plaintiff's consent, the TCPA claim arises out of that conduct, and exercise of

7

jurisdiction is not unreasonable." *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, 2013 WL 6571629, at *8 (N.D. Cal. Aug. 19, 2013), *report and recommendation adopted*, 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013).

To satisfy the first prong for specific personal jurisdiction, Plaintiff must establish "the Defendant allegedly (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzennegger*, 374 F.3d at 803. Here, Plaintiff alleges Enterprise made phone calls to Plaintiff by authorizing an agent to do so on its behalf (SAC ¶ 23), and also offers evidence of a recording from an April 2017 call to Plaintiff during which the caller states he/she is calling on behalf of Enterprise. (Plaintiff Decl. ¶ 4, Ex. 1.)[2] In addition, the SAC alleges Enterprise is registered to do business in California, Enterprise actively solicited Plaintiff to purchase its products, and Plaintiff is a California resident. (SAC ¶¶ 4, 5, 13.) These allegations (and the evidence offered by Plaintiff) are sufficient to show Enterprise committed an intentional act (making calls), expressly aims its efforts at the forum state (residents of California), and the act caused harm in the forum state (calls without prior consent). *See, e.g., Heidorn*, 2013 WL 6571629, at *8 (finding specific jurisdiction over out-of-state defendant where plaintiff alleged he received numerous unsolicited telephone calls and emails from defendant and plaintiff's TCPA claims arose out of those contacts).[3]

Plaintiff satisfies the second prong of the specific jurisdiction test because

---

[2] While Enterprise argues calls were never made on its behalf to Plaintiff, factual disputes must be resolved in Plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *See Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) ("Unless directly contravened, Mattel's version of the facts is taken as true and conflicts between the facts contained in declarations submitted by the two sides must be resolved in Mattel's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.").

[3] *Cf. Morrill*, 873 F.3d at 1149 (holding defendants actions were not purposefully directed at Arizona because the potential foreseeability of some incidental harm to plaintiffs in Arizona due to substantial litigation that was pending in Nevada, without more, does not show Defendants expressly targeted the forum state).

his TCPA claims arise from the alleged phone calls made by Enterprise. *See, e.g., Heidorn*, 2013 WL 6571629, at *8 (finding TCPA claim arose out of defendant's activities directed at the forum state where plaintiff alleged defendant called plaintiff without prior consent); *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, 2009 WL 29905, at *10 (N.D. Cal. Jan. 5, 2009) (finding specific jurisdiction test prong re: claim arises out of or relates to defendant's forum related activities was satisfied in TCPA action because but for defendant's conduct in creating the fax advertisements and hiring third party advertisers to broadcast them, plaintiff would not have been injured in California).

As to the third prong, Enterprise does not argue or offer any evidence demonstrating the exercise of jurisdiction would be unreasonable. No compelling reason has been presented to the Court for declining to exercise personal jurisdiction over Enterprise. *See Burger King Corp. v. Ruzewicz*, 471 U.S. 462, 477 (1985) ("[W]here a defendant who purposefully directed his activities at forum residents seeks to defeat jurisdiction he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."); *see also Heidorn*, 2013 WL 6571629, at *8 (finding in TCPA action that the exercise of jurisdiction over out-of-state defendant who directed its activities at the forum state by calling the plaintiff without the plaintiff's consent was not unreasonable).

Therefore, the Court exercises specific jurisdiction over Enterprise. Accordingly, Enterprise's Motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) is denied.

### C. Failure To State a Claim

Enterprise also seeks to dismiss the SAC pursuant to Rule 12(b)(6) on the ground Plaintiff fails to state a claim against Enterprise for the following reasons: (1) Plaintiff fails to allege facts demonstrating Enterprise is liable to him; (2) Plaintiff fails to allege facts demonstrating he is the proper plaintiff for his DNC

Registry claims; and (3) Plaintiff fails to allege sufficient facts regarding use of an automatic telephone dialing system ("ATDS").

### 1. Enterprise's Liability / Agency

Enterprise argues Plaintiff fails to allege sufficient facts regarding Enterprise directly making a call to Plaintiff and does not allege facts regarding an agency relationship such that it is liable to Plaintiff for the calls at issue.

"A seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third party telemarketer." *Gomez v. Campbell Ewald Co.*, 768 F. 3d 871, 877 (9th Cir. 2014), *aff'd* 136 S.Ct 663 (2016).[4] To establish an agency relationship, Plaintiff must show a seller "controlled or had the right to control" the agent and specifically the "manner and means" of the calls made by the agent. *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). "Principles of apparent authority and ratification may also provide a basis for vicarious liability." *Id.*

Here, the SAC alleges Enterprise contacted Plaintiff beginning or around April 2017 (SAC ¶ 13), the person who eventually spoke to Plaintiff represented he or she was calling on behalf of Enterprise (*id.* ¶ 14), Plaintiff is "informed and believes and thereupon alleges" that the calls were made on Defendants' behalf, "in an agency capacity, at their direction and under their control, and with Defendants' full knowledge that the calls were being made, the manner in which they were being made, and the equipment and software used to make such calls" (*id.* ¶ 23), and "defendants controlled or had the right to control the manner and

---

[4] In May 2013, the Federal Communications Commission ("FCC") issued a Declaratory Ruling wherein it determined vicarious liability for violations of Section 227(b) and Section 227(c) of the TCPA are governed by federal common law principles of agency. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013) (hereinafter, "FCC Ruling"). "Because Congress has not spoken directly to this issue and because the FCC's interpretation was included in a fully adjudicated declaratory ruling, the interpretation must be afforded Chevron deference." *Gomez*, 768 F.3d at 878.

means of the calls alleged hereinabove (*id.* ¶ 23). Such allegations are sufficient to allege an agency relationship for purposes of stating a claim against Enterprise for vicarious liability under the TCPA. *See, e.g., In re Jiffy Lube Intern., Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012); *Ikuseghan v. Multicare Health Sys.*, 2014 WL 4715732, at *1 (W.D. Wash. Sept. 22, 2014). Accordingly, Enterprise's Motion to dismiss for failing to state facts regarding Enterprise's liability is denied.

### 2. Calls To a Residential Number

Enterprise argues the SAC fails to state a claim because the SAC alleges Plaintiff was called on his mobile telephone numbers, and does not allege Plaintiff was called on a residential number.

Section 227(c) of the TCPA directs the Federal Communications Commission ("FCC") to implement regulations to protect telephone subscribers' privacy rights and authorizes the "establishment and operation" of a "national database to compile the numbers of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(2). The regulations promulgated by the FCC pursuant to § 227(c) prohibit the initiation of any telephone solicitation to "[a] residential telephone subscriber who has registered his or her telephone number" on the national DNC Registry. 47 C.F.R. § 64.1200(c). The FCC's regulations specifically state the rule prohibiting calls to telephone numbers registered on the national DNC Registry applies to wireless telephone numbers. *See* 47 C.F.R. § 64.1200(e) (The rules set forth in 47 C.F.R. § 64.1200(c) "are applicable to any person or entity making telephone solicitations or telemarking calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'").[5] *See also Waterbury v. A1 Solar Power Inc.*, 2016 WL 3166910, at *4

---

[5] The FCC's Report and Order, 18 F.C.C. Rcd. 14014 (July 3, 2003), is hereinafter

11

(S.D. Cal. June 7, 2016) ("Section 64.1200(e) expands section [64.1200(c)] to apply also to solicitors calling wireless telephone numbers."); *Drew v. Lexington Consumer Advocacy, LLC*, 2016 WL 1559717, at *6 (N.D. Cal. Apr. 18, 2016) ("Although these regulations refer to 'residential' subscribers, they apply to calls made to wireless telephone numbers, too.") (citing 47 C.F.R. § 64.1200(e)).

In the 2003 FCC Order, the FCC rejected the argument that "residential subscribers" for purposes of § 227(c) means "telephone service used primarily for communications in the subscriber's residence" and precludes wireless subscriber. FCC Order at ¶ 34. The FCC reasoned such a definition is "too restrictive and inconsistent with the intent of section 227," and "had Congress intended to exclude wireless subscribers from the benefits of the TCPA, it knew how to address wireless services or consumers explicitly." *Id.* at ¶ 35. Accordingly, the FCC held:

> We conclude that the national database should allow for the registration of wireless telephone numbers, and that such action will better further the objectives of the TCPA and the Do-Not-Call Act. In so doing, we agree with the FTC and several commenters that wireless subscribers should not be excluded from the protections of the TCPA, particularly the option to register on a national-do-not-call list. Congress has indicated its intent to provide significant protections under the TCPA to wireless users. Allowing wireless subscribers to register on a national do-not-call list furthers the objectives of the TCPA, including protection for wireless subscribers from unwanted telephone solicitations for which they are charged.

*Id.* at ¶ 33. The 2003 FCC Order is binding on this Court. *See Baird v. Sabre, Inc.*, 636 F. App'x 715, 716 (9th Cir. 2016).[6]

Here, the SAC alleges Enterprise called Plaintiff's mobile phone number ending in -0705, which was registered on the DNC Registry. (SAC ¶ 15.)

---

referred to as the "2003 FCC Order."

[6] Enterprise fails to provide any authority requiring a plaintiff to allege a mobile number is his residential number to state a claim under §227(c) of the TCPA.

Plaintiff therefore alleges sufficient facts regarding a violation of § 227(c). Accordingly, Enterprise's Motion to dismiss based on failure to state facts regarding calls made to a residential number is **DENIED**.

### 3. Use of an ATDS[7]

Enterprise contends Plaintiff fails to plead sufficient facts regarding use of an ATDS.

Here, the SAC alleges Plaintiff "is informed and believes":

- All the calls alleged above were made using an automatic telephone dialing system as defined by 47 U.S.C. §227(a)(1) (SAC ¶ 19);

- The equipment used to make the calls had the capacity to store or produce telephone numbers to be called, using random number generator or sequential number generator, and to dial such numbers (SAC ¶ 20);

- After the ATDS made the call to the cellular phone number, a pause ensued where the caller could not be heard momentarily, and then a "click" was heard which is indicative of the unique use of an ATDS (which would not be heard when making a call using a non-ATDS or regular phone system (SAC ¶ 21); and

- The equipment used to make the calls generated the calls automatically from its database of telephone numbers without human involvement (SAC ¶ 22).

These allegations sufficiently raise an inference of use of an ATDS for Plaintiff's TCPA claims to survive beyond the pleading stage.[8] Accordingly, Enterprise's

---

[7] Use of an ATDS is one of three elements of a claim for violation of the TCPA. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (The three elements for a TCPA violation are: "(1) the defendant called a cellular telephone number; (2) using an ATDS; (3) without the recipient's prior express consent.").

[8] *See, e.g., Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 945 (C.D. Cal. 2015) (denying motion to dismiss TCPA claims for failing to plausibly allege use of an ATDS where plaintiff alleged there was a "pause" after he answered the phone, that defendant would likely need a "sophisticated phone system" capable of storing phone numbers and dialing them automatically, and that telemarketers such as defendant use autodialers such as the "StrataDial VC2 phone system," reasoning that together Plaintiff's allegations are enough to plead

Motion to dismiss based on failure to state sufficient facts regarding use of an ATDS is denied.

### 4. Waiver of DNC Registry Claims

Enterprise seeks dismissal of Plaintiff's TCPA claims based on alleged calls to numbers on the DNC Registry on the ground those claims were waived because they were not pled in Plaintiff's FAC. While the FAC did not assert claims based on calls to numbers on the DNC Registry, those claims were repled in the SAC, and therefore not waived. Accordingly, Enterprise's Motion to dismiss Plaintiff's DNC claims based on waiver is denied.

### 5. Standing For Injunctive Relief

Enterprise also requests that the Court strike any allegation for injunctive relief from the SAC. Enterprise argues Plaintiff lacks standing for injunctive relief because there is no immediate threat of repeated injury since the last call to Plaintiff as alleged in the SAC was on May 12, 2017.

A plaintiff has standing to sue for injunctive relief only "if there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1982). Here, the SAC alleges: (1) Defendants contacted or attempted to contact Plaintiff on his mobile telephone numbers on April 5, 6, and 13 of 2017,

---

defendant's use of an ATDS); *Loveless v. A1 Solar Power, Inc.*, 2015 WL 4498787, at *3 (C.D. Cal. July 23, 2015) (finding plaintiff's allegation that she was greeted by "dead air" on several occasions prior to defendant joining the call sufficient to survive a motion to dismiss); *Pacleb v. Cops Monitoring*, 2014 WL 3101426, at *4 (C.D. Cal. July 7, 2014) (finding plaintiff's allegation that defendant called him using an ATDS to be sufficient because "[w]hether defendant actually did so is better adjudicated after the evidentiary record has been developed"); *Knutson v. Reply!, Inc.*, 2011 WL 1447756, at *1 (S.D. Cal. Apr. 13, 2011) (denying motion to dismiss for failure to state facts regarding use of an ATDS, holding plaintiff's allegations regarding the number that displayed when he received the calls, the lack of response when he inquired who was calling, and a five second pause after which he heard the line click over to another party, were sufficient to infer the use of an ATDS); *Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013) ("plaintiff's complaint alleges both that defendant used an automatic telephone dialing system and that defendant's system utilized an artificial voice, either allegation is sufficient on its own to support plaintiff's claims").

and on May 12, 2017 (SAC ¶¶ 16-17); (2) Plaintiff has received numerous solicitation calls from Defendants within a 12-month period (SAC ¶ 28); and (3) Defendants continued to call Plaintiff in an attempt to solicit its services and in violation of the National Do-Not-Call provisions of the TCPA despite not receiving prior written consent from Plaintiff. (SAC ¶¶ 30-31.) Taking Plaintiff's allegations as true, it is plausible that Plaintiff may receive additional calls in the future. *See, e.g., Dioquino v. Sempris, LLC*, 2011 WL 13127143, at *4 (C.D. Cal. Dec. 8, 2011) (denying motion to dismiss for lack of standing as to injunctive relief claim where defendant failed to offer any evidence that it will not harm plaintiff again in the future). Accordingly, Enterprise's Motion to dismiss based on Plaintiff's lack of standing for injunctive relief is denied.

### 6. Compliance With Local Rules

Enterprise also seeks to dismiss the SAC based on Plaintiff's failure to comply with Local Rules 23-1, 23-2.1, 23-2.2.[9] In the SAC, Plaintiff asserts class allegations with two subclasses – one subclass concerning the National Do Not Call violation (i.e., violations of §227(c)(5)) (the "DNC class"); and a second subclass class concerning the ATDS dialing of mobile numbers (i.e., violations of §227(b)) (the "ATDS class"). (SAC ¶ 42.) The SAC also alleges "Plaintiff brings this action individually and on behalf of all others similarly situated." (SAC ¶ 1.) While Plaintiff has not technically complied with the local rules, Enterprise neither argues nor demonstrates such failure has prejudiced it in any way. Accordingly, Enterprise's motion to dismiss based on Plaintiff's failure to comply with the above-referenced local rules is denied.

---

[9] Local Rule 23-1 provides: "The title of any pleading purporting to commence a class action shall include the legend: '(Title of Pleading) Class Action.'" Local Rule 23-2.1 provides: "The section shall contain reference to the portion or portions of Fed R. Civ. Proc. 23 under which it is contended that the suit is properly maintainable as a class action." Local Rule 23-2.2 provides: "The section shall contain appropriate allegations thought to justify the action's proceeding as a class action, including but not limited to (g) the nature of notice to the proposed class required and /or contemplated."

### D. Stay of Proceedings

USPC seeks a stay of proceedings pending resolution of the appeal in *Marks v. Crunch San Diego, LLC*, No. 14-56834 (9th Cir. docketed Nov. 21, 2014), or in the alternative, *ACA International v. Federal Communications Commission*, No. 15-1211 (D.C. Cir. filed Nov. 25, 2015). None of the parties oppose a stay of proceedings after the Court has ruled on Enterprise's Motion to dismiss. Having denied Enterprise's Motion, the Motion to Stay is granted, and this action is stayed pending resolution of the appeal in *Marks v. Crunch San Diego*.

## IV. CONCLUSION

For the reasons set forth above, Enterprises Motion to Dismiss is **DENIED**. Enterprise shall file an answer to the SAC **no later than November 28, 2017**. United Service Protection Corporation's Motion to Stay is **GRANTED**, and this action is stayed once Enterprise's answer to the SAC is filed.

**IT IS SO ORDERED.**

DATED: November 21, 2017.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

16